**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Action No. 1:26-cr-00014-DDD

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.      TIMOTHY RYAN REED,

      Defendant.

---

**ORDER DENYING DEFENDANT'S REQUEST FOR TEMPORARY RELEASE
PENDING SENTENCING**

---

On January 15, 2026, this court held a contested detention hearing and detained Defendant Timothy Ryan Reed pursuant to 18 U.S.C. § 3142. *See* Order of Detention, ECF No. 14. Pursuant to that detention order, the defendant is currently in the custody of the U.S. Marshals Service. The matter is before the court again because the defendant requested that the question of detention be reopened. *See* ECF No. 28. For the reasons that follow, the court respectfully finds that the defendant shall remain detained.

**A.      Background**

As reflected in the detention order, in deciding to detain the defendant the court carefully considered the arguments of counsel, the Pretrial Services Report, and the entire docket. The court's analysis in the detention order is fully incorporated here, but for clarity, the court will briefly reiterate the core points it gleaned from the proffered information that informed its conclusion regarding each of the factors under 18 U.S.C.§ 3142(g).

The defendant was charged with two counts of bank robbery, in violation of 18 U.S.C. § 2113(a), both of which occurred during the daytime hours at FirstBank locations in the Denver metropolitan area. In carrying out the robberies, per the proffer, the defendant was clad so as to mask his appearance. At the first robbery, which occurred on October 31, 2025, he wore a disguise of Halloween makeup with "fake skin," and at the second, which took place on December 23, 2025, he was dressed in a Santa hat and dark sunglasses. These disguises were described by the bank personnel who were the victims of the crimes and reflected in images of the robber in bank surveillance footage. Per the proffer, the defendant did not bring a weapon to either robbery, but he did behave in a manner designed to intimidate bank personnel in demanding that they turn over money—which they did, in both instances. In deciding to detain the defendant, the court respectfully rejected the notion, proffered by the defendant, that his intimidating and threatening behavior did not pose a significant danger because bank employees are trained to deescalate such situations by immediately turning over money. *See* ECF No. 14 at 3 (citing *United States v. Voog*, 702 F. App'x 692, 694 (10th Cir. 2017) ("The concern about safety of the community is to be given a broader construction than the mere danger of physical violence. Safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community.") (quotation omitted)).

The court next determined, consistent with its obligation to examine the § 3142(g) factors, that the weight of the evidence against the defendant is strong. *Id.* at 4. And with regard to the defendant's history and characteristics, the court described the defendant's lengthy criminal history, including a conviction on a state charge of first degree burglary that resulted in

a thirteen-year sentence in the Colorado Department of Corrections. *Id.* The court also took note of the defendant having engaged in criminal activity while under supervision, which the court determined "evince[ed] a disinclination to comply with court-ordered conditions of release." *Id.* Finally, the court concluded that, viewed in its totality, the defendant's record demonstrated "a serious criminal history reflecting a propensity to engage in conduct that endangers the community." *Id.* at 5.

However, in detaining the defendant, the court did not discount the proffered evidence indicating that the defendant may suffer from an addiction problem that is tied to his criminal activity. The court stated at the detention hearing that it would be willing to consider in-patient substance abuse treatment for the defendant as a condition of pretrial release that might—depending on the circumstances—reasonably assure the defendant's presence in court and the safety of the community.

On March 17, 2026, the defendant filed a motion to reopen the detention hearing based on his having procured placement in a "six-month inpatient relapse prevention program" administered by Salvation Army Harbor Light in Denver. *See* ECF No. 28 at 2. The court granted the motion to reopen the detention hearing, ECF No. 30, and heard argument on the detention question on March 23, 2026. ECF No. 33. As the undersigned informed the parties at the time of that hearing, the court took the matter under advisement because of the unique context in which the renewed question of detention arises.

Critically, circumstances have changed in important respects since the first detention hearing on January 12, 2026, when the court made its statement concerning in-patient drug

3

treatment for the defendant. The difference between that date and the present is that the defendant is no longer presumed innocent. On February 12, 2026, the defendant notified the court that he had reached a disposition of his case with the government and requested a change-of-plea hearing. ECF No. 20 at 1. On March 16, 2026, Chief United States District Judge Daniel D. Domenico conducted that change-of-plea hearing and accepted the defendant's plea of guilty to count 2 of the indictment, in which he was charged with violating 18 U.S.C. § 2113(a) in connection with the December 23, 2025 robbery of a FirstBank location at 2740 South Colorado Boulevard in Denver. *See* ECF No. 25 at 2. A sentencing hearing is set for June 23, 2026. *Id.* The defendant now seeks temporary release prior to sentencing so that he can engage in drug rehabilitation treatment.

**B.      Analysis of the Detention Question Following Defendant's Guilty Plea**

The defendant's entry of a guilty plea shifts the detention issue to a new statutory context: 18 U.S.C. § 3143, a provision of the Mandatory Detention Act of 1990, which provides that that a defendant awaiting sentencing "shall order" that the person "be detained" unless certain exceptions apply. *Id.* § 3143(a)(1). Specifically, as pertinent here, "[t]he judicial officer shall order that a person who has been found guilty of an offense described in subparagraph (A), (B), or (C) of subsection (f)(1) of section 3142 and is awaiting imposition or execution of sentence be detained . . ." *Id.* § 3143(a)(2). The offenses articulated in 18 U.S.C. § 3142(f)(1)(A) include "a crime of violence," which encompasses the crime to which the defendant has pleaded guilty here: bank robbery that is effectuated by means of "force and violence, or by intimidation" in violation of 18 U.S.C. § 2113(a). *See* ECF No. 12 at 1-2 (charging the defendant with this

crime in the second count of the indictment). As the Tenth Circuit Court of Appeals has confirmed, "this portion of § 2113(a) is categorically a crime of violence under the elements clause." *See United States v. Harden*, 787 F. App'x 547, 547-48 (10th Cir. 2019) (citing *United States v. McCranie*, 889 F.3d 677, 679-81 (10th Cir. 2018)); *see also McCranie*, 889 F.3d at 681 ("Bank robbery by intimidation involves the threatened use of physical force, and so the district court correctly labeled McCranie's instant and prior convictions crimes of violence.").

The Mandatory Detention Act of 1990 requires that defendants who are found guilty of certain offenses must be detained pending sentencing, with three exceptions. First, a defendant may be released "if the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted." 18 U.S.C. § 3143(a)(2)(A)(i). Second, a defendant may be released if "an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person[.]" 18 U.S.C. 3143(a)(2)(A)(ii). Neither criterion for release is met here. The first obviously does not apply in light of the defendant's guilty plea, and the government has affirmatively represented to this court that it will ask for a guideline sentence—in the range of 46-57 months' imprisonment—at the defendant's sentencing. ECF No. 31 at 3.

The third exception to mandatory detention provides:

> A person subject to detention pursuant to section 3143(a)(2) . . ., *and* who meets the conditions of release set forth in section 3143(a)(1) [unlikely to flee or pose a danger], may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate.

*Id.* § 3145(c) (emphasis added). The Tenth Circuit has emphasized that "[t]he statutory reference to *exceptional* reasons has real substance; circumstances that do not extend beyond the ordinary

provide no basis for release under § 3145(c)." *United States v. Velarde*, 555 F. App'x 840, 841 (10th Cir. 2014) (citing *United States v. Larue*, 478 F.3d 924, 925 (8th Cir. 2007); *United States v. Lea*, 360 F.3d 401, 403 (2d Cir. 2004); *United States v. Wages*, 271 F. App'x 726, 727-28 (10th Cir. 2008)).[1]

Here, the defendant contends that his proposal to release to the Harbor Light program constitutes an "exceptional reason" under the statute. At the reopened detention hearing, he emphasized that Harbor Light is a very strict substance abuse treatment program, imposing on its participants limitations on leaving the facility and cabining access to cell phones and computers, among other restrictions. The defendant further proposed that he be subject to "home incarceration" and GPS monitoring while participating in the program. Overall, the defendant emphasized that he is very motivated to succeed and that this program will put him "on the right track." The court does not doubt the defendant's good faith in making this release proposal or his intention to do everything he can to succeed in the Harbor Light program. The issue, however, is that the defendant has not "clearly shown" that a drug treatment program qualifies as an "exceptional reason" under § 3153(c).

As the Tenth Circuit has made clear, "exceptional" is defined as "being out of the ordinary: uncommon, rare." *Wages*, 271 F. App'x at 727 (quoting *Webster's Third New Int'l Dictionary* (*Unabridged*) 791 (G. & C. Merriam Co. 1976)); *see id.* (finding no exceptional

---

[1] At the close of the reopened detention hearing, the court invited the parties to submit supplemental authority concerning the meaning of "exceptional reasons" in § 3145(c). The government submitted supplemental authority, ECF No. 34, which the court has considered in its evaluation of the defendant's request for temporary release pending sentencing.

reasons requiring release pending sentencing where a defendant pointed to "his (1) age (53);
(2) lack of prior criminal record; (3) use of a wheelchair and need for a special mattress to avoid
pain; (4) limited ability to hear, making communication impossible through the 6 by 8 inch
visitation window at the Muskogee County jail, and (5) need to care for his elderly mother, who
also is deaf and has only a limited ability to see") (citation modified). As specifically relevant
here, courts have routinely found that participation in a substance abuse treatment does not
constitute an "exceptional reason" justifying release pending sentencing. *United States v. Lopez*,
184 F. Supp. 3d 1139, 1146 (D.N.M. 2016) (finding that "the defendant's commitment to
avoiding crime in the future by undergoing treatment is insufficient" to constitute an
"exceptional reason") (citing *United States v. Jager*, No. CR 10-1531-JB, 2011 WL 831279, at
*19 (D.N.M. Feb. 17, 2011) ("Jager's participation in treatment is unexceptional.") (citing
*Wages*, 271 F. App'x at 728)); *United States v. Jackson*, No. CR 20-118, 2022 WL 716968, at *3
(W.D. Pa. Mar. 10, 2022) ("Courts have also held that a defendant's desire to obtain treatment
for substance abuse or mental health issues does not amount to exceptional reasons for release.")
(citing *United States v. Brown*, 368 F.3d 992, 993 (8th Cir. 2004) ("defendant's participation in a
treatment program is not an extraordinary reason" for release); *United States v. Rodella*, 101 F.
Supp. 3d 1075, 1133-34 (D.N.M. 2015) ("The psychological effect of incarceration cannot
constitute exceptional circumstances if it is experienced across the general prison population.")).

Examining the facts at hand pursuant to these standards, the court finds that the
defendant's desire to participate in a substance abuse treatment program—beneficial, and
laudable, though it may be—does not amount to an exceptional reason for release pending his

sentencing. Further, pursuant to the same factors under § 3142(g) the court considered at the original detention hearing, which the court must also consider under § 3145(c), as the situation now stands the defendant is no longer presumed innocent of committing bank robbery by "force and violence, or by intimidation" in violation of 18 U.S.C. § 2113(a). The defendant now is adjudged is guilty of that crime, and at his sentencing in June, he faces what is likely to be three to four years in prison. To be sure, that is not an excessively long sentence, in comparison with some, but neither is it a negligible amount of time to be incarcerated. Looking at the § 3142(g) factors from this new perspective, the court must take into account the fact that the Harbor Light program is not administered under lockdown conditions and so the court cannot evaluate the defendant's risk of non-appearance as nonexistent, as he urged at the reopened detention hearing. Put simply, the defendant could remove himself from the Harbor Light program at any time, and his looming, certain sentence provides a strong incentive for him to do so.

Moreover, as to the consideration of posing a danger to the safety of any other person or the community if released, the court appreciates that substance abuse treatment may mitigate that risk, but it cannot find that the defendant has clearly and convincingly established that he will not pose such a risk if released to the Harbor Light program, as he is obliged to do. *See* 18 U.S.C. § 3143(a) (judicial officer must "find[] by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released"). The court understands that now, as at the time of his original detention hearing, the defendant represents that he suffers from the effects of an extremely serious injury incurred in 2022; this, he argues, lessens the risks he poses to the community. But the court must simultaneously

acknowledge that these same circumstances applied in December 2025, when the defendant admits that he committed a bank robbery, and that his physical challenges did not stop him from carrying out that robbery and then fleeing the scene on a bicycle.

For these reasons, the court finds that the defendant has not clearly shown that exceptional reasons warrant his release, and that a consideration of the § 3142(g) factors—including the weight of the evidence and the fact that he is no longer presumed innocent—fails to clearly and convincingly show that he would not flee, or that he would not pose a danger to the safety of any other person or the community, if temporarily released from custody while awaiting sentencing.

The court's conclusion concerning the defendant's failure to show an exceptional reason supporting temporary release here is not altered by the two cases the defendant referenced at the reopened detention hearing. In the first, *United States v. David Michael Flores*, No. 1:25-cr-00062-DDD-1, the defendant was placed on bond *before* his guilty plea. *See id.* ECF No. 29 (August 8, 2025 Order Setting Conditions of Release); *id.* ECF No. 35 (September 3, 2025 courtroom minutes reflecting acceptance of guilty plea).[2] Additionally, the defendant in *Flores* was recently diagnosed with colon cancer, resulting in a temporary vacation of his sentencing, which remains in place. *Id.* ECF No. 47 ¶ 1; *id.* ECF No. 51. Similarly, *United States v. Kevin Monteiro*, No. 21-cv-00020-DDD-1, is not analogous to the situation here. In that matter, the

---

[2] The court notes that Judge Cyrus Y. Chung, the United States Magistrate Judge assigned to the case, also imposed a special condition in which the defendant's participation in *offsite* activities in the Harbor Light program were to be supervised by the Salvation Army. *See* ECF No. 30.

defendant was released on bond on May 7, 2021, *see* ECF No. 31, and then entered a guilty plea on October 28, 2021, at which point the court "allow[ed] the defendant to remain free on bond subject to the same conditions as set forth in the order setting his conditions of release." *See id.* ECF No. 38.

In short, neither of these cases presented a factual scenario in which a defendant, who pleaded guilty to a crime while he was incarcerated on pretrial detention, was released on bond *after* entering a guilty plea and while awaiting sentencing. But even if the circumstances were more closely aligned, the defendant's bid for release here rests on his participation in a substance abuse treatment program, which he has not clearly shown as being so out of the ordinary or rare a situation as to constitute an "exceptional reason" supporting temporary release from custody under § 3145(c).

Accordingly, the defendant's request for temporary release pending sentencing is respectfully **DENIED**.

DATED: April 7, 2026                                   BY THE COURT:

                                                       Susan Prose
                                                       United States Magistrate Judge